UNITED STATES OF AMERICA
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO.:  1:20-CR-42-GNS |
| CHRISTOPHER J. DEYOUNG | DEFENDANT |

### UNITED STATES' SENTENCING MEMORANDUM
### *Electronically Filed*

The United States of America, by counsel, Madison Sewell, Assistant U.S. Attorney for the Western District of Kentucky, submits this sentencing memorandum pursuant to the Court's Order following entry of guilty plea (R. 24) entered on April 14, 2021.  Sentencing is set for August 16, 2021 at 10:00 AM.

### DISCUSSION

The facts of DeYoung's offense conduct are accurately detailed in the Presentence Report.  (R. 29 Presentence Report at 97-100).  Given the graphic nature of the material, it need not be repeated here.

The United States has no objection to the Presentence Investigation Report, which finds an offense level of 34, a criminal history category of I, and a Guideline imprisonment range of 151-188 months.  Defense counsel plans to ask for a variance, arguing that the child pornography guideline is regularly not followed and that certain enhancements should be disregarded.

The child pornography guideline remains the least-consistently-followed sentencing guideline.  2020 Sourcebook of Federal Sentencing Statistics (Table 31) (showing data from 2020 that 60.8% of child pornography offenders received a variance, more than any other offense category).  However, "[a] court that disagrees with §2G2.2 [on policy grounds] must take on [a] formidable task.  Congress's long and repeated involvement in raising the offense levels for §2G2.2 makes clear that the grounds of its action were not only empirical, but retributive—that they included not only deterrence, but punishment."  *United States v. Bistline*, 665 F. 3d 758, 764 (6th Cir. 2011) (*Bistline I*).  As in any other case, "the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49, (2007); *see also United States v. Bistline*, 720 F.3d 631, 633 (*Bistline II*) (reversing a district court that never mentioned the guideline range and instead noted that it "continues to have significant concerns about the helpfulness" of the child pornography guideline).

A 2012 Sentencing Commission Report[1] found that virtually all child pornography offenders receive enhancements for number of images, pre-pubescent matter, and use of a computer.  In *United States v. Lynde*, 926 F.3d 275 (6th Cir. 2019) the Sixth Circuit found that the 2012 report "does not change the statutory sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit." *Id.* at 280 (*quoting United States v. Cubero*, 754 F. 3d 888, 900 (11th Cir. 2014)).  Here,

---

[1] U.S. Sentencing Commission, 2012 Report to the Congress: Federal Child Pornography Offenses (2012).  Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

the binding precedent includes the Sixth Circuit's 2015 discussion of the continuing relevance of the oft-maligned "use of a computer" enhancement:

> The enhancement remains relevant—regardless of its frequency of application—because the harm it addresses is real. And as the district court explained during sentencing, the enhancement applies in [the defendant's] case not because he used a computer, but because his use of a computer ensured that thousands of people had access to videos of children being sexually assaulted.

*United States v. Walters*, 775 F.3d 778, 787 (6th Cir. 2015); *but see Lynde*, 926 F.3d at 281 (upholding the district court's rejection of the use-of-a-computer enhancement and noting "a district court could reasonably conclude that the use of a computer does not warrant extra punishment").

On June 29, 2021, the Sentencing Commission produced an updated report[2] focusing on federal sentencing of non-production child pornography offenders. In the report, the Commission recommends a focus (and provides a wealth of data) on three factors: (1) the content of the offender's child pornography collection, (2) the offender's degree of involvement in an internet community devoted to child pornography, and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense. (2021 Report at 3).

Regarding content, the child pornography involved in DeYoung's case is particularly graphic and involves children as young as infants and toddlers. As noted in

---

[2] U.S. Sentencing Commission, Federal Sentencing of Child Pornography, Non-Production Offenses (June 2021). Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

the 2021 Report, this puts DeYoung in a class with 27.4 percent of distribution offenders and 16.2 percent of receipt offenders.  (2021 Report at 31).

Regarding participation in an internet community, DeYoung's participation in the group chat puts him in a class with 43.7% of non-production offenders.  *Id.* at 38.  The chat at issue involved not only sharing of images, but also commentary, discussion, and the ability to make requests. However, as noted in the Presentence Report, DeYoung's participation in the group chat was passive:  he joined as a "read only" member, so could view and download material, but could not post material or participate in chats himself.  DeYoung's distribution (Count 1) occurred in a different context.  (R. 29 Presentence Report at 98).  Specifically, the investigation showed that on March 13, 2020, DeYoung used WhatsApp to send an image of child pornography to an unknown individual.

Regarding additional conduct, the parties agree that the "available facts do not support an enhancement for 'pattern of activity involving the sexual abuse of a minor.'" (R. 22 Plea Agreement at 57-58).  However, a downward departure or variance cannot be based on the mere fact that the defendant did not commit a greater crime or trigger a greater Guideline enhancement.  *United States v. Borho*, 485 F.3d 904, 911 (6th Cir. 2007), *quoting United States v. Wind*, 128 F.3d 1276, 1278 (8th Cir.1997) ("Because the Guidelines take into account the gravity of a possession offense as compared with more serious forms of exploitation, [the defendant] is not entitled to a downward departure on the ground that he did not commit, or have the tendency to commit, a worse crime."); *United States v. Barton*, 76 F.3d 499, 503 (2d Cir.1996) (holding that a defendant who was convicted for the knowing receipt of child pornography under 18 U.S.C. § 2252(a)(2)

was not entitled to a downward departure "merely because he did not commit an additional crime").

## VICTIM IMPACT

HSI sent DeYoung's child pornography collection to the National Center for Missing and Exploited Children (NCMEC) for victim identification, resulting in the identification of 414 image files and 37 video files involving known victims. Altogether, DeYoung's collection included victims from 74 identified child pornography series that are circulated on the internet. These series include scenes of victimization of children from around the world, including Belgium, Canada, the Czech Republic, Denmark, France, Germany, Italy, Moldova, the Netherlands, the Philippines, Poland, Russia, Spain, Sweden, Thailand, the United Kingdom, and the United States.

The United States has provided notification to those victims who requested it. To date, eight victims have responded with documentation and restitution requests, attaching documentation, including, e.g., reports of psychological consultation, expert economic loss evaluation, case law, documentation of attorney's fees, forensic psychological examinations, restitution requests, and victim impact statements. These statements document the ongoing suffering that victims suffer as images of their childhood abuse continue to circulate across the internet. As many of the victims note, this circulation, along with the attendant suffering, will likely go on for the rest of the victims' lives.

DeYoung was a part of this. Together, DeYoung and other offenders constitute a network for continued child exploitation. As each file is downloaded and viewed, again and again, the offender cares only about his own egocentric sexual gratification. Download by download, the circulation continues and continues. This behavior, criminal

in itself, has consequences. Some offenders, in part steeled by this normalization, go on to physically abuse children or produce child pornography of their own. (2021 Report at 1, noting "child pornography offenses normalize the sexual abuse of children and may promote existing tendencies towards sex offending and the production of new images").

These children have now submitted victim impact statements, lawyer fees, and restitution requests. Here, the parties hope to submit an agreed restitution order under a separate filing.

## CONCLUSION

The United States estimates that given the issues outlined in this Memorandum, the sentencing hearing should take one half hour. At sentencing, the United States will, consistent with its plea agreement, recommend a sentence at the low end of the applicable Guideline range.

Respectfully Submitted,

MICHAEL A. BENNETT
Acting United States Attorney

*/s/ Madison T. Sewell*
Madison T. Sewell
Assistant United States Attorney
241 E. Main St., Ste. 305
Bowling Green, KY 42101
Phone: (270) 781-4438
madison.sewell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent by electronic transmission through the Court's ECF system to all counsel of record on August 6, 2021.

                                                   */s/ Madison T. Sewell*
                                                   Madison T. Sewell
                                                   Assistant United States Attorney